IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL M. DROZDOWSKI,       ) | |
|        Plaintiff,       ) | |
| ) | |
|        vs       ) | Civil Action 04-756 |
| ) | |
| NORTHLAND LINCOLN MERCURY,       ) | |
|        Defendant.       ) | |

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendant's motion for summary judgment (Docket No. 29) be granted as to the plaintiff's request for compensatory and punitive damages in Count III of the complaint and denied in all other respects.

II. Report:

Presently before the Court is a motion for summary judgment submitted by the defendant, Northland Lincoln Mercury. For reasons discussed below, the defendant's motion for summary judgment should be granted in part and denied in part.

Plaintiff Daniel M. Drozdowski commenced this employment discrimination action, alleging that the defendant terminated his employment due to his disability of a depressive disorder in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (Count I of the complaint), and the Pennsylvania Human Relations Act ("PHRA"), as amended, 43 P.S. § 951, et seq. (Count II). The plaintiff also contends the defendant discharged him in retaliation for his filing a charge of employment discrimination against Northland Ford, his previous employer, in violation of the ADA (Count III) and the PHRA (Count IV). The plaintiff seeks an award of back pay, front pay, compensation for lost

fringe benefits, compensatory and punitive damages, attorney's fees and the cost of litigation. The Court's federal question and supplemental jurisdiction are invoked.

As gleaned from the record, the plaintiff was employed by Northland Ford as a technician from May of 1998 through August 20, 2001. In his last annual performance evaluation at Northland Ford, dated January 31, 2001, the plaintiff was rated "outstanding" in the areas of reliability and attendance, and rated "very good" in the areas of quality of work, productivity, job knowledge, adherence to policy and interpersonal relationships, although it was said he "need[ed] to work on punctuality." During his employment at Northland Ford, the plaintiff was verbally reprimanded by his supervisor, Loren Mosholder, about tardiness and attendance problems.[1]

In mid-February 2001, the plaintiff met with Loren Mosholder and requested a leave of absence due to personal problems relating to the death of his father. At that meeting, the plaintiff told Mosholder he was suffering from a psychological disorder and wanted to take time off to receive counseling. Northland Ford's owner, Cameron Jones, approved the plaintiff's request for leave. In February 2001, while on unpaid leave, the plaintiff sought psychological treatment and was diagnosed as having a major depressive order by psychologist Gail Hague.[2]

Prior to returning to work from his leave, the plaintiff stopped at Northland Ford to collect his pay check; attached to his paycheck was a written reprimand for leaving work without permission on February 14, 2001, for which he was suspended during part of the period he was on leave. On April 5, 2001, the plaintiff was given a written warning for tardiness. On

---

1. See, defendant's statement of undisputed facts at ¶¶ 1, 5 and 13, the plaintiff's response thereto, and Exhibit K to the plaintiff's appendix of exhibits.

2. See, defendant's statement of undisputed facts at ¶¶ 7 and 9, and the plaintiff's response thereto.

August 20, 2001, the plaintiff was discharged from Northland Ford for the proffered reason of unacceptable attendance.[3]

The plaintiff filed a charge of discrimination against Northland Ford with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination in his discharge as a result of a disability. Thereafter, the plaintiff was employed at Premier Lincoln Mercury.[4]

Cameron Jones, the owner of Northland Ford, then purchased Premier Lincoln Mercury and named it Northland Lincoln Mercury. Following the change in ownership, the plaintiff and other service employees were laid off from Northland Lincoln Mercury for the proffered reason that personnel had to be cut in light of the defendant's financial statements.[5]

The plaintiff received a right-to-sue notice on his EEOC charge and commenced this action.[6] In Counts I and II of the complaint, the plaintiff contends that the defendant discriminated against him based on his disability when it terminated his employment in violation of the ADA and the PHRA. The defendant has moved for summary judgment on these claims, arguing that the plaintiff cannot show he had a "disability" as defined by the ADA. In the alternative, the defendant insists it had no knowledge of the plaintiff's alleged disability when it terminated his employment. Summary judgment is appropriate if no genuine issue of material fact is in dispute, and the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); Biener v. Calio, 361 F.3d 206, 210 (3d Cir. 2004).

---

3. See, plaintiff's statement of additional material facts at ¶¶ 6-8, defendant's statement of undisputed facts at ¶¶ 10 and 14, and the plaintiff's response thereto.

4. See, defendant's statement of undisputed facts at ¶¶ 16 and 25, and the plaintiff's response thereto.

5. See, defendant's statement of undisputed facts at ¶¶ 24, 29 and 32, and the plaintiff's response thereto.

6. See, defendant's statement of undisputed facts at ¶ 16, and the plaintiff's response thereto.

In addressing the allocations of burdens of proof and persuasion in cases arising under the ADA and the PHRA, courts utilize the three-stage shifting burden of proof set forth in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973) and <u>Texas Dep't. of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).  <u>See</u>, <u>Newman v. GHS Osteopathic, Inc.</u>, 60 F.3d 153, 157-58 (3d Cir. 1995).  Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination.  <u>McDonnell Douglas</u>, 411 U.S. at 802.

To satisfy his prima facie case under the ADA, the plaintiff must show that: (1) he has a "disability", (2) is a qualified individual, and (3) has suffered an adverse employment decision because of his disability.  <u>Skerski v. Time Warner Cable Co.</u>, 257 F.3d 273, 278 (3d Cir. 2001).  The plaintiff must prove those same facts under the PHRA, as "any analysis applied to [an] ADA claim applies equally to [a] PHRA claim." <u>Matczak v. Frankford Candy & Chocolate Co.</u>, 136 F.3d 933, 935 n.1 (3d Cir. 1997).

The defendant argues that the plaintiff cannot establish the first prong of his prima facie case, as he did not have a "disability" as defined by the ADA.  We disagree.  Under the ADA, the term "disability" means, with respect to an individual--

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded as having such impairment.

42 U.S.C. § 12102(2).

The plaintiff bases his claim of a disability on subsection (A) above, asserting that his depressive disorder substantially limits his major life activity of sleeping.  In discussing his impairment, the plaintiff explains:

> I have suffered from depression during periods of my life since I was an adolescent.  When the depression is most severe, I am unable to get up on time.  My sleep

4

>patterns are erratic. I am often awake much of the night;
>therefore, it is difficult for me to start my day when the
>alarm clock rings early in the morning.[7]

The plaintiff also testified that when his depressive disorder gets bad, he is unable to perform such physical tasks as cutting the grass, shoveling snow and taking out the trash.[8]

The defendant does not dispute that having a depressive disorder constitutes an impairment for purposes of the ADA. Still, the United States Supreme Court has stated: "Merely having an impairment does not make one disabled for purposes of the ADA." Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 195 (2002). Rather, to qualify as disabled, a claimant must also demonstrate that the impairment substantially limits a "major life activity". Id.

"Major life activities" under the ADA include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 29 C.F.R. § 1630.2(i) (1997). Sleeping is also deemed a major life activity. Head v. Glacier Northwest Inc., 413 F.3d 1053, 1060 (9th Cir. 2005); Cambria v. Ass'n. of Flight Attendants, 2005 WL 1563343, *10 (E.D.Pa., June 30, 2005). Conversely, activities such as shoveling snow, mowing the grass and gardening do not constitute major life activities. Weber v. Strippit, Inc., 186 F.3d 907, 914 (8th Cir. 1999), cert. denied, 120 S.Ct. 794 (2000). While "picking up trash" is an act that may fall within the major life activity of "caring for oneself", Marinelli v. City of Erie, 216 F.3d 354, 362 (3d Cir. 2000), citing Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir. 1995), the plaintiff claims his disorder restricted him from "taking out the trash", not picking it up. To the extent "taking out the trash" also falls within the major life activity of "caring for

---

7. See, plaintiff's EEOC response to No. 4 at Exhibit 3 to plaintiff's appendix of exhibits.

8. See, plaintiff's deposition at pp. 89-91.

Case 2:04-cv-00756-ARH   Document 45   Filed 06/02/06   Page 6 of 14

oneself," the plaintiff has not shown his depressive disorder substantially limits him from caring for himself.

Under federal regulations interpreting the ADA, the term "substantially limits" means, in relevant part:

> Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)(ii) (1997). To meet this standard, "[t]he impairment must be severe when compared to the functioning of the general population." Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 185 (3d Cir. 1999). Indeed, the word "substantial" in the phrase "substantially limits" "clearly precludes impairments that interfere in only a minor way with the performance of [a major life activity] from qualifying as disabilities". Toyota Motor Mfg., 534 U.S. at 197.

The major life activity of "caring for oneself" encompasses such activities as feeding oneself, driving a car, attending to one's grooming, vacuuming and washing dishes. Dutcher, supra, 53 F.3d at 726. The plaintiff has not shown that his depressive disorder substantially limits him from performing any of these activities. Thus, we find that the plaintiff's impairment does not substantially limit his major life activity of caring for himself.

In contrast, the plaintiff has presented evidence that his depressive disorder substantially limits his major life activity of sleeping. Relevant factors in assessing if an individual is substantially limited in a major life activity include: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the expected permanent or long term impact of or resulting from the impairment. Pathmark Stores, supra, 177 F.3d at 185, citing 29 C.F.R. § 1630.2(j)(2).

6

As noted above, the plaintiff avers that when his depression is most severe, he is "unable to get up on time," his "sleep patterns are erratic,", he is "often awake much of the night," and as a result, "it is difficult for [him] to start [his] day when the alarm clock rings early in the morning."[9]  In a letter dated May 2, 2004, Dr. Susan Mickley Drolet states:

> [The plaintiff] suffers from a chronic Major Depressive Episode, severe... [As a result of medication,] he was finally beginning to sleep more than three hours.  His sleep disturbance (both difficulty falling asleep and EMA) has resulted in him being chronically late for work...[10]

The plaintiff confirms that his disability has prevented him from reporting to work on time due to his inability to get up early in the morning.[11]  He also asserts that because he has "suffered through periods of depression for the past 15 years, this is a condition which is likely to resurface in the future."[12]  Based on the facts recited above, a fact-finder could reasonably conclude that the plaintiff is substantially limited in the major life activity of sleeping.

In its alternate argument for summary judgment on Counts I and II, the defendant argues it had no knowledge of the plaintiff's alleged disability.  To establish the third prong of his prima facie case, the plaintiff must show causation, i.e., that he was subjected to an adverse employment decision "because of his disability."  Cambria, supra, 2005 WL 1563343, *11, citing 42 U.S.C. § 12112(a).  This the plaintiff has done.

---

9. See, plaintiff's EEOC response to No. 4 at Exhibit 3 to plaintiff's appendix of exhibits.

10. See, Exhibit 9 to the plaintiff's appendix of exhibits.

11. See, plaintiff's EEOC response to No. 7 at Exhibit 3 to plaintiff's appendix of exhibits.

12. See, plaintiff's EEOC response to No. 5 at Exhibit 3 to plaintiff's appendix of exhibits.

To show that the defendant was aware of his impairment prior to his discharge, the plaintiff avers as follows: "On February 14, 2001 I spoke with Loren Mosholder in his office at approximately 8:10 in the morning. I told him that I would like to request a leave of absence to seek psychological help due to issues I was struggling with."[13] Likewise, in his deposition testimony, the plaintiff confirms that he informed Loren Mosholder, his department manager, that he was having difficulties associated with his psychological disorder and wanted to take time off from work to receive counseling and get help from a doctor.[14]

Evidence also shows that following his discharge from Northland Ford, the plaintiff filed a charge of disability discrimination with the EEOC. Cameron Jones, the defendant's owner, testified that he was aware of the plaintiff's EEOC charge and received documents relating thereto when he purchased Premier Lincoln Mercury.[15] Since the plaintiff has shown that the defendant had knowledge of his impairment prior to discharging him, there is sufficient evidence of causation to withstand summary judgment. Thus, summary judgment is not appropriate on the plaintiff's claims of disability discrimination in Counts I and II.

In Counts III and IV of the complaint, the plaintiff contends the defendant discharged him in retaliation for his filing a charge of disability discrimination with the EEOC in violation of the ADA and the PHRA. In moving for summary judgment on these claims, the defendant makes two arguments: (1) the plaintiff's request for compensatory and punitive damages cannot lie, as they are not proper remedies for retaliation claims brought under the ADA and PHRA, and (2) the plaintiff cannot establish a retaliatory discharge claim.

---

13. See, plaintiff's EEOC response to No. 9 at Exhibit 3 to plaintiff's appendix of exhibits.

14. See, plaintiff's deposition at p. 57.

15. See, Cameron Jones' deposition at pp. 86-89.

We will address the defendant's latter argument first. In moving for summary judgment on the plaintiff's retaliatory discharge claims in Counts III and IV, the defendant insists the plaintiff cannot establish his claims, nor refute its legitimate reason for discharging him.

The McDonnell Douglas shifting burdens of proof apply to the plaintiff's retaliatory discharge claims. Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993), cert. denied, 114 S.Ct. 186 (1993). Thus, the plaintiff has the initial burden of establishing his prima facie case. McDonnell Douglas, 411 U.S. at 802. To establish a prima facie case of retaliation, the plaintiff must show that: (1) he was engaged in a protected activity, (2) he suffered an adverse employment decision, and (3) there was a causal connection between the protected activity and the adverse employment decision. Kachmar v. Sungard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997).

The plaintiff has established his prima facie case of retaliatory discharge, for he engaged in a protected activity when he filed a charge of discrimination with the EEOC. Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995). The plaintiff also suffered an adverse employment decision when he was discharged, and a causal connection appears to exist between the protected activity and the plaintiff's termination.

To demonstrate a causal link necessary for retaliation, a plaintiff must show either a temporal proximity between his protected activity and the adverse action, or evidence of ongoing antagonism. Abramson v. William Paterson College of N.J., 260 F.3d 265, 288 (3d Cir. 2001). Here, the plaintiff filed his EEOC charge on April 7, 2002 following his discharge from Northland Ford.[16] Although the plaintiff was not discharged from defendant Northland Lincoln

---

16. See, Exhibit N to the defendant's appendix of exhibits.

Mercury until March 24, 2003[17], there is evidence of a causal link between the filing of the EEOC charge and the plaintiff's discharge.

> In Kachmar, supra, the Third Circuit Court of Appeals stated:
>
> It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific. When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and the effect does not disprove causation.

109 F.3d at 178. Here, the reason why the plaintiff's discharge did not occur in closer proximity to the filing of his EEOC charge is this -- the plaintiff was not employed by the defendant when he submitted his EEOC charge.

Rather, the plaintiff did not become an employee of the defendant until March 19, 2003, when Cameron Jones took over the operation of Premier Lincoln Mercury, which then became Northland Lincoln Mercury.[18] Cameron Jones was aware of the plaintiff's EEOC charge when he purchased Premier Lincoln Mercury.[19] On March 24, 2003, five days after Cameron Jones purchased the defendant, it terminated the plaintiff's employment. Based on these facts, a causal connection exists between the plaintiff's protected activity and his discharge.

In turn, the defendant has sustained its burden of production by presenting a legitimate, non-discriminatory reason for its decision to terminate the plaintiff's employment. See, St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2747 (1993). According to Cameron

---

17. See, plaintiff's deposition at p. 125.

18. See, deposition of Cameron Jones at pp. 51-52.

19. Id. at pp. 86-89.

Jones, the plaintiff and other service employees had to be laid off in light of the defendant's financial statements.[20]

At this juncture, it is incumbent upon the plaintiff to satisfy his ultimate burden of persuasion by producing evidence that the defendant's articulated reason for its adverse employment action was pretextual.  See, St. Mary's Honor Center, supra, 113 S.Ct. at 2747-48. The plaintiff may meet this burden in one of two ways: by introducing evidence

> from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

To establish pretext under the first prong of the Fuentes standard, the Third Circuit Court of Appeals has stated: "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Jones v. School Dist. of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999).  Rather, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Id.  "[A] plaintiff may satisfy this standard by demonstrating, through admissible evidence, that the employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason.'" Id.

---

20.  Id at pp. 101, 103.

11

To survive summary judgment under the second prong of the Fuentes standard, a plaintiff may show pretext by "pointing to evidence in the record which allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Jones, 198 F.3d at 413. "For example, the plaintiff may show that the employer has previously discriminated against [him], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." Id., quoting Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998).

Here, the plaintiff has proffered evidence of pretext under the second prong of the aforesaid Fuentes standard. That is, a fact finder could infer that a discriminatory reason more likely than not motivated the defendant to discharge the plaintiff. That is because the timing of the plaintiff's discharge, coming five days after Cameron Jones purchased and became owner of Northland Lincoln Mercury with knowledge of the plaintiff's EEOC charge, may suggest a discriminatory motive. See, Jalil v. Advel Corp., 873 F.2d 701, 708-09 (3d Cir. 1989), cert. denied, 506 U.S. 903 (1992) (finding that plaintiff's discharge only two days after his employer learned of his EEOC charge called into question the employer's motivation in discharging him).[21] In addition, as discussed above, the plaintiff has presented evidence showing that the defendant may have discriminated against him due to his disability of a depressive disorder. In light of such evidence, the plaintiff has created a factual dispute as to whether a discriminatory animus motivated the defendant to discharge him.

---

21. We note that while the timing of the plaintiff's discharge from Northland Lincoln Mercury in relation to Cameron Jones' purchase of it is integral to establishing the plaintiff's prima facie case of retaliation, "there is nothing preventing it from also being used to rebut defendant's proffered explanation." Jalil, supra, 873 F.2d at 709, n.6, citing Dillon v. Coles, 746 F.2d 998, 1003 (3d Cir. 1984).

As to the defendant's alternate argument on damages, it cites Kramer v. Banc of America Securities, LLC, 355 F.3d 961 (7th Cir. 2004), and Sabbrese v. Lowe's Home Centers, Inc., 320 F.Supp.2d 311 (W.D.Pa. 2004), both of which held that compensatory and punitive damages are not available for ADA retaliation claims. Kramer, 355 F.3d at 964-65; Sabbrese, 320 F.Supp.2d at 331. Based on these rulings, the plaintiff concedes that compensatory and punitive damages are not recoverable on his ADA retaliation claim in Count III, such that he is limited to equitable relief on that claim.[22]

With respect to his PHRA retaliation claim in Count IV, the plaintiff seeks compensatory damages, not punitive damages, as punitive damages are not available under the PHRA. See, Hoy v. Angelone, 720 A.2d 745, 749 (Pa. 1998). However, compensatory damages may be recovered for PHRA retaliation claims. Bianchi v. City of Philadelphia, 80 Fed.Appx. 232, 235-37 (3d Cir. 2003) (upholding jury award of compensatory damages in PHRA retaliation claim); Marra v. Philadelphia Housing Authority, 404 F.Supp.2d 839, 842 (E.D.Pa. 2005) (noting that jury awarded compensatory damages to plaintiffs on their PHRA retaliation claim). Thus, the plaintiff's request for compensatory damages in Count IV is proper.

Therefore, it is recommended that the defendant's motion for summary judgment (Docket No. 29) be granted as to the plaintiff's request for compensatory and punitive damages in Count III of the complaint and denied in all other respects.

Within ten (10) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall

---

22. See, plaintiff's brief in opposition to the defendant's current motion at p. 10.

have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                                  Respectfully submitted,

                                                  /s/ Amy Reynolds Hay
                                                  AMY REYNOLDS HAY
                                                  United States Magistrate Judge

Dated: June 2, 2006

cc:       Hon. Joy Flowers Conti
           United States District Judge

           Neal A. Sanders, Esquire
           Dirk D. Beuth, Esquire
           Law Office of Neal Alan Sanders
           1924 North Main Street Extension
           Butler, PA 16001

           Marie Milie Jones, Esquire
           Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.
           U.S. Steel Tower, Suite 4850
           600 Grant Street
           Pittsburgh, PA 15219