IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL M. DROZDOWSKI,  )
      Plaintiff,  )
        )
      vs  )  Civil Action No. 04-756
        )
NORTHLAND LINCOLN MERCURY,  )
      Defendant.  )

OPINION

Plaintiff, Daniel M. Drozdowski ("Drozdowski"), commenced this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951, et seq., alleging that he was discriminated against because of his disability when defendant Northland Lincoln Mercury ("Lincoln Mercury") terminated his employment in March of 2003, and retaliated against him for having previously filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

The case proceeded to trial before a jury on March 26, 2007, and on March 29, 2007, the jury returned a verdict in favor of defendant and against plaintiff. Plaintiff filed a motion for new trial on May 15, 2007, which is presently before the Court.

Plaintiff initially argues that the Court improperly responded to a question submitted by the jurors during their deliberations. Plaintiff contends that the supplemental instruction was a substantial error that unduly prejudiced him.

"A new trial should be granted only where the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if the verdict were to stand.'" Springer v. Henry, 435 F.3d 268, 274 (3d Cir. 2006), quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1076 (3d Cir. 1996) (en banc). The Supreme Court has also

held that a motion for a new trial may be founded on the grounds that damages are excessive or that the district court made substantial errors in admission or rejection of evidence or instructions to the jury. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). See Marshak v. Treadwell, 58 F. Supp. 2d 551, 556 (D.N.J. 1999); Mullin v. International Brotherhood of Teamsters, Local 249, 2007 WL 81060 at *1 (W.D. Pa. January 8, 2007). "The scope of review of an erroneous jury instruction is whether the charge, 'taken as a whole, properly appraises the jury of the issues and the applicable law.'" Montgomery County v. Microvote Corp., 320 F.3d 440, 445 (3d Cir. 2003), quoting Smith v. Borough of Wilkinsburg, 147 F.3d 272, 275 (3d Cir. 1998). See Pryer v. C.O. 3 Slavic, 251 F.3d 448, 454 (3d Cir. 2001), quoting Griffiths v. CIGNA Corp., 988 F.2d 457, 462 (3d Cir. 1993) ("Where a jury charge is alleged to have stated an incorrect legal standard, 'we will review the charge as a whole in the light of the evidence to determine if it fairly and adequately submitted the issues to the jury and we will reverse if the instructions were capable of confusing and thereby misleading the jury'"). Further, when a motion for a new trial is based on an erroneous jury charge, the trial court has broad discretion in ruling on the motion. Mullin v. International Brotherhood of Teamsters, Local 249, 2007 WL 81060 at *1, citing Bonjorno v. Kaiser Aluminum & Chemical Corp., 752 F.2d 802, 812 (3d Cir. 1984).

Here, the record shows that during the course of their deliberations the jurors submitted the following question:

> Does the ADA require the employer to go to the employee and ask for medical support and/or what accommodations are needed or does the employee have a duty to present support and a request specifically stating the problem and what is needed?

2

(T.T. 3/29/07: p. 3). After a lengthy discussion with counsel in chambers, the Court responded by providing the following instruction:

> Under the ADA or the Americans with Disabilities Act, an employee must request an accommodation from the employer.

(T.T. 3/29/07: p. 49). Plaintiff does not dispute that it is the employee and not the employer who must request an accommodation when needed but claims that the supplemental charge erroneously instructed the jury that a plaintiff must always request an accommodation in order to prevail on an ADA claim and that, because no accommodation was necessary in this case for plaintiff to perform the essential functions of his job, the instruction was misleading.[1]

      Plaintiff, however, has read the supplementary instruction in a vacuum rather in the context of this case. While it is true that not every disabled employee requires an accommodation in order to be able to perform the essential function of his or her job, whether or not the instant plaintiff needed an accommodation and whether he asked for one was very much an issue in this case. Indeed, one of Lincoln Mercury's defenses was that plaintiff had problems with punctuality and attendance which impacted his ability to perform his job and that plaintiff failed to request an accommodation. In support thereof, defense counsel not only asked plaintiff whether he had ever asked for an accommodation but also elicited testimony from Mr. Jones and Mr. Moshholder that they were unaware that plaintiff had any mental health issues or that he was seeking treatment because he never brought it to their attention, i.e., never asked for an accommodation (T.T. 3/27/07: pp. 119, 120, 135-36, 150-51; T.T. 3/28/07: pp. 177-80, 205-06, 207). In fact, the Court instructed the jury at the close of evidence that defendant has denied that

---

1. Plaintiff contends that because he had been given performance evaluations in January of 2000 and 2001, in which he was highly rated in areas of punctuality and attendance despite comments regarding problems in those areas, punctuality and attendance are not an essential functions of the job and that he could therefore perform the job without accommodation. Pl.'s Brief, p. 5 (Doc. 87).

plaintiff ever told them about his depressive disorder and denied that plaintiff ever requested an accommodation (T.T. 3/28/07: pp. 270, 274-75).

Moreover, of particular concern to the Court was the fact that plaintiff's counsel, notwithstanding plaintiff's position that he did not need an accommodation to perform the essential functions of his job, repeatedly referenced in his closing remarks the fact that plaintiff approached his supervisor in February of 2001 to talk about "mental issues," "needing help," and "needing time off," and that plaintiff's request for thirty days off was turned down (T.T. 3/28/07: pp. 250, 251, 252, 253, 257, 259). The clear implication is that plaintiff not only needed an accommodation but had, in fact, asked for one and was denied the accommodation he sought. Further, counsel also stated in his closing that:

> When [plaintiff] first started working for Northland Ford in '98, there was no reason, I believe you'll understand when you deliberate, there was no reason for him to fill out the application at that time and say that he needed any accommodation or any assistance because of some kind of a problem he had. Keep in mind, because the issue or the event that you have heard set in motion this downhill slide that [he's] been on was the death of his father in August of '99.
>
> * * *
>
> There was no other form introduced by the defendant in this case that said *they* then asked *him* to fill out a follow-up form that says, oh, my father passed on in August of '99. Oh, by the way, now, I'm having issues.

(T.T. 3/28/07: pp. 246-47) (emphasis added). Thus, not only did counsel again acknowledge that accommodation was an issue in the case but, by so arguing, implied that it was the employer's responsibility to go to the employee to ascertain if he or she has issues that need to be accommodated, which is a clear misstatement of the law. See Peter v. Lincoln Technical

Institute, 255 F. Supp. 2d 417, 437 (E.D. Pa. 2002) ("The employee bears the responsibility of initiating the interactive process by providing notice of her disability and requesting accommodation for it"). See also Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000) ("Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation"); Taylor v. Phoenixville School District, 184 F.3d 296, 312 (3d Cir. 1999) ("An employee can demonstrate that an employer breached its duty to provide reasonable accommodations ... by showing that ... the employee requested accommodations or assistance with his or her disability"). Under these circumstances, the Court appropriately responded to the jury's question, which merely sought a clarification of the applicable law, by instructing it that under the ADA it is the employee that must request an accommodation from the employer.

Finally, while the Court recognizes that the defendant in this case is Lincoln Mercury and not Northland Ford, and that the issues revolve around Lincoln Mercury's actions, it is clear that these issues can not be divorced from the events that took place at Northland Ford which was owned and operated by the same individuals that own and operate Lincoln Mercury. Indeed, because, as plaintiff has argued, he was terminated from Lincoln Mercury only five days after Mr. Jones purchased the dealership much of the evidence regarding what the principles at Lincoln Mercury knew about plaintiff's disability and his need for an accommodation stems from what these same individuals knew while at Northland Ford. Plaintiff's counsel took advantage of that evidence in his closing by tying plaintiff's present claim of disability discrimination to the previous actions of Messrs. Jones and Moshholder who, while at Northland Ford, allegedly knew he had a disability and failed to accommodate him at that time. Under these circumstances, plaintiff cannot now argue that whether or not he asked Lincoln Mercury for accommodation is

irrelevant because he had no time to make the request or that apprising the jury of the governing law is prejudicial to his case. Thus, viewing the supplemental instruction in light of the evidence submitted at trial as well as the charge as a whole, we decline to find that the jury was either confused or misled.

Plaintiff also argues that he is entitled to a new trial because defendant's counsel made erroneous statements during her opening and closing statements. Specifically, plaintiff complains that counsel misstated the law with respect to plaintiff's burden regarding his claim of retaliation, indicated that proof or documentation of a disability is required in order for an employer to have notice or knowledge of that disability, and speculated as to why plaintiff requested time off in February of 2001 arguing that the reason given, i.e., to seek treatment for a psychological disorder, was not credible. See Pl. Brief, pp. 6-10 (Doc. 87).

Review of the record, however, reflects that plaintiff made no objection to any of counsel's remarks either at the time they were made or at any time thereafter and, therefore, has waived the right to object to them now. Waldorf v. Shuta, 142 F.3d 601, 629 (3d Cir. 1998), quoting Murray v. Fairbanks Morse, 610 F.2d 149, 152 (3d Cir.1979) ("Counsel's failure to object precludes [a party] from seeking a new trial on the grounds of the impropriety of opposing counsel's closing remarks").

Moreover, the jury was instructed that neither counsel's opening or closing remarks are evidence and should not be considered by them as such and that they are charged with remembering the evidence presented and to apply the law as instructed by the Court (T.T. 3/27/07: pp. 9, 10, 12, 16, 18, 19) . Because it is presumed that a jury will follow the instructions that they are given, it may be presumed here that the jury applied the law as instructed by the Court and disregarded any contrary statements made by counsel. Citizens Financial Group, Inc.

6

v. Citizens Nat. Bank of Evans City, 383 F.3d 110, 133 (3d Cir. 2004), citing United States v. Givan, 320 F.3d 452, 462 (3d Cir. 2003) ("This Court presumes that the jury followed the Court's instructions").

Plaintiff also contends in his motion that he had warned the Court during the final pretrial conference on March 20, 2007, that defense counsel had verbalized her intent not to adhere to the Court's order granting plaintiff's motion in limine, which precluded the admission of the EEOC and PHRC's determinations with respect to the charges filed by plaintiff against Northland Ford, and that defense counsel had, indeed, failed to abide by the order during trial. Plaintiff, however, has not cited to any record references or otherwise indicated in what manner defense counsel violated the Court's order and has failed to present any argument on the issue in his brief. Moreover, the Court has been unable to find any such violation in the record or, for that matter, any objection by plaintiff. As such, plaintiff has not provided the Court with a basis for finding that a miscarriage of justice has occurred or that a new trial is otherwise warranted.[2]

Finally, although plaintiff objects to the Court's treatment of his attorney during the trial, categorizing it as "harsh" and as exhibiting "animosity" toward him particularly over the timing of plaintiff's medical witnesses, he has not supported his position with any record references so that the issue may be put in context. Nor has plaintiff addressed the issue in his brief or otherwise indicated how he was prejudiced. Indeed, the record establishes that the exchange that took place between plaintiff's counsel and the Court concerning his medical witnesses took place outside the hearing of the jury (T.T. 3/27/07: pp. 114-16; T.T. 3/28/07: pp.

---

2. We also note that while defendant was prohibited from submitting evidence regarding the *outcome* of the earlier charge, the Court ruled that evidence showing that plaintiff had, in fact, filed the charge was admissible. See 3/20/07 Hearing Memo (Doc. 73). Thus, to the extent that defense counsel elicited testimony that a charge of discrimination had been filed against Northland Ford and that an investigation took place, she was not in violation of the Court's order. See T.T. 3/28/07: pp. 178-80.

7

71-73, 98-102). Moreover, as the record reflects, the Court merely voiced her displeasure with counsel at having to delay the trial at the expense of the jury because counsel had taken it upon himself to schedule his witnesses for specific times without consulting the Court and did not have them available when they were needed. Id. Notably, the witnesses were nevertheless able to testify (T.T. 3/28/07: pp. 73-98, 129-154), and, consequently, plaintiff has not provided the a basis for granting a new trial.

/ s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated: 21 December, 2007

cc:     All counsel of record by Notice of Electronic Filing